Catron, Judge.
The first question presented in this cause arises upon the following state of facts: — John C. Turner married Catharine, the daughter of Charles Lee, who died in 1820, intestate, leaving Catharine one ol his eleven distributees, then the wife of J. C. Turner. In 1822, J. C. Turner died: we will suppose the distributive share of Catharine Turner, still standing in the hands of the administrator of Charles Lee, at the death of J. C. Turner, who left two children, joint distributees with his wife of his estate.
Did the distributive share of Catharine, resting in the hands of Charles Lee,'administrator, survive to her on the death of her husband, or vest inhis executors? If it survived to the wife as a chose in action outstanding, then it is not liable to the payment of the husband’s debts, orto he distributed to his children jointly with the wife.
On the intermarriage, the husband is entitled to the wife’s choses in action, provided they are reduced to possession during the coverture, but they can only he sued for, jointly with the wife; and if the husband dies, pending the action, it survives to the wife, who takes the money discharged of his claim; so if he does not sue, during *414 the coverture, the right of action and property survives to the wife, on his death.
Tiie husband may, during'lhe coverture, for valuable consideration, assign the wife’s choses in action, which wjqj ¿jeemc¿ equivalent to reducing them into possession; still the assignee is subject to make a provision for the wife, by the order of a court of chancery; 4 Br. C. C. 139. 3 Yes. 506. Nor is there any distinction in this respect between interests vesting in the wife before, or after coverture. 2 Vern. 40. 1 Bro. C. C. 51. 1 P. Wms. 382, note (1) Jacobson vs. Williams, 1 Pr. W. 382. 9 Ves. 87. 3 Pr. Wms. 197. 2 Atk. 206.
If the husband survives the wife he takes the choses in action as her next of kin. 2 Vern. 302, Gill vs. Payton, supreme court at Nashville 1821. 1 P. Wms. 378, 381. 3 Atk. 526, 458. 6 Johns. Rep. 112.
If the husband can sue at law for the wife’s legacy alone, by reason of the executor’s assent, he may do so, and recover; but the better opinion seems to be at the present day, that for a legacy or distributive share vesting during the coverture, the husband cannot sue alone in equity, during the lifetime of the wife, and if he die before the legacy is reduced to possession, it survives to the wife.— in the early authorities there is much confusion, but what the practice has been in the English and American courts, may be collected from the following authorities: Langhorn vs. Nenny, 3 Ves. 467. Beaty vs. Dandy, 2 Atk. 207. Blount vs. Vestlord, 5 Ves. 515. Wildman vs. Wildman, 9 Ves. 174. Parker vs. Hall, 12 Ves. 497. Vale vs. Tomlinson, 16 Ves. 413. Scuyler vs. Hayle, 5 Johns. C. Rep. 796. Wallace and Ux vs. Tallefairro, 2 Call’s R. 449, 468. See 10 Ves. 578.
In Connecticut (Griswold vs. Penniman, 2 Con. Rep. 564,) a different doctrine is holden, and the distinction taken, that a legacy or distributive share, (which is a sta-tutary legacy,) accruing to the wife during coverture, vests absolutely in the husband, and goes to his administrators after his death, the wife living, to her exclusion. In England,before the American revolution, when the authorities *415 are well compared, but clearly since, this distinction is denied as being well founded; in New York and nia, it has been declared untenable; (5 Johns. C. 206. 2 Call’s R. 468,) and such it is believed, has been the course of legal opinions in Tennessee. That a distributive share which had accrued to the wife before marriage, and had not during coverture been reduced to possession, would survive to her, on the death of the husband^ is well settled; and it is believed the same rule applies to a distributive share accruing during the coverture. She must sue jointly with the husband, during his lifetime to recover the distributive share; on his death the right of action survives to the wife, and there is no law to take the property from her; so if the wife die, the husband Jakes the distributive share as her administrator, and there is no law to compel him to distribute to her next of kin.— Gill vs. Payton and others, Nashville 1822, Haywood and Whyte, Judges. Gill vs. Yandell and others, executors of Doctor Hamilton, Nashville, 1828, Peck and Catron, Judges. The wife, or her representative, must sue, and recover the chose in action; the husband is entitled to the administration of the wife, in every case.
The principal question in this cause, however, rests on the fact, did John C. Turner, so far reduce into possession his wife’s distributive share before his death, as to cause it to vest? In Feb. 1821, letters of admininstration on Charles Lee’s estate were granted to Richard H. Lee. Previous to the administrator’s sale of the property of Charles Lee, it was agreed amongst the distributees, (of whom the administrator was one,) that each distributee should purchase of the property to an amount equal to his distributive share; which should, on a settlement between the distributees and the administrator, be set off against the debt created by the purchase at the sale.— John C. Turner purchased more than his wife’s share amounted to, — it being impossible at that time to ascertain the exact amount each distributee was entitled to. The distributees gave their notes for the amount purchased, which were to stand over until the estate was settled, *416 and debts due to the estate, and claims against it received an(j ¿¡scjjarged. before this could be done John C. Turner, (March 1822,) died. This mode of proceeding between the administrator and the distributees of Charles Lee, was of very ordinary occurrence, where there are many distributees, and the slaves and other family property, such as plate, furniture, family pictures, books, carriages, &c., are necessarily sold by the administrator, but which could not be permitted to fall into the hands of strangers without doing violence to the feelings of the children of the deceased. Hence an arrangement similar to the above is frequently resorted to as a mode of distribution, and the property purchased by the distribu-tee is,in fact, a delivery of the distributive share; such was clearly the fact in the present instance. .We, therefore, think that the note given by John C. Turner to SI. II. Lee, administrator, should be abated to the amount of the share of Mrs. Turner, and affirm the decree of the circuit court in this respect.
But at the sale of the personal property the heirs also agreed that the administrator should sell at auction the land of the deceased, which was done, and the same pur-chasedby John H. Lee, one of the sons. The court also decreed the proceeds of this sale to the administrator of John C. Turner, because Catharine agreed to it. She was covert at the time she assented, which was wholly void, nor did she do any act afterwards that can be recognized as binding; she is therefore entitled to her share of the land, in the same manner as if such auction sale had not been made; on this point the decree- below will be reversed.
Whyte, Judge.
In 1818, John C. Turner intermarried with Catharine B. Lee, daughter of Charles Lee.— After this marriage and during the continuance of the co-verture between John C. Turner and his said wife, to wit, in the year 1820, Charles Lee died intestate leaving eleven distributees, of whom the said John C. Turner in right of his wife was one. In 1821, letters of adminis- *417 iration were granted on Charles Lee’s estate to Richard H. Lee, one of the distributees. The administrator proceeded to sell the property of his intestate, Charles and it was principally purchased in hy distributees of the estate. John C. Turner purchased rather more than his distributive share. At the time of the sale and previous to it, it was expressly agreed among the distributees, of whom the said administrator was one, and an express agreement was made with the administrator, that each dis-tributee should have a credit out of his purchases for the amount of his distributive share; but it being impossible to ascertain what the amount of such credit would be, notes were executed by each distributee for the fulla-mount of his purchase, but which was to be subject to said credit when ascertained. The property sold higher in consequence of this agreement among the distributees. At the time the personal property was sold a power of attorney was executed to said administrator to sell the land also, and it was sold in the same manner, and at the same time the other property was sold, and was purchased by John H. Lee, another distributee. All this took place in March 1821. In 1822 John C. Turner, the husband of the said Catharine B., departed this life intestate, leaving two children, viz: Charles L. Turner and John Baldwin Turner, for whom the defendant, John Turner, Sen’r. is guardian. John Turner Sen’r. is also administrator of the estate of JohnC. Turner. Since the death of the said John C. Turner, his widow, the said Catha-rine, hath intermarried with the plaintiff Abner Lesseter. The plaintiffs insist the said distributive share of Charles Lee’s estate belongs exclusively to them, because it was not reduced into possession by the said John C. Turner in his lifetime. On the other hand, the defendants contend that John C. Turner did reduce the said distributive share of his wife into possession during the coverture.
Two questions are made on this record: 1st. Whether, on the death of the said intestate, Charles Lee, the distributive share of the plaintiff, Catharine B. Lesseter, did not vest in her then husband, John C. Turner: and 2nd. *418 If it did not then vest, whether it was not reduced into p0gsessj0n |-,y husband John C. Turner, by the sale of the property in March 1821, by the administrator Rich-H. Lee, under its circumstances,
|0 tlie first question, there is an intimate connection between the right of administration, and the right of property. A short review of the law on intestates’ estates, down to the passing of the statute of distributions, 22 and 23 of Ch. II, ch. 10, inclusive, of which our statute of distributions, 1766, ch. 3, is in substance a copy, will throw considerable light on this question, and afford the principles upon which the course of decision, and the cases subsequent to that statute have proceeded.
Anciently, when a person made no will, the king was entitled to seize the goods as the general trustee of the kingdom. This prerogative the king continued to exercise for some time by his own ministers of j ustice, and probably in the county court where most matters of all kinds were determined. It was granted as a franchise to several Lords of manors and others, to grant administrations to their intestate tenants, and suitors inthéirown courtsba-ron and other courts, or to have their wills there proved. 9 Rep. 37. Afterwards the crown in favor of the church invested the ecclesiastical courts with this branch of the prerogative, and then the ordinary might seize the goods, and give, alien, or sell them at his will and dispose of the money in pious uses. To this disposition of the intestate’s goods the probate of wills followed, as it was thought right that the will should be proved to the satisfaction of the prelate, whose right of distributing such goods was superseded thereby. Theabuse of this power by the Popish Clergy, who retained the goods to their own use, without paying the debts of the intestate, produced the statute 13 Ed. 1, ch. 19, compelling them to pay the intestate’s debts as far as the goods would extend. But the residue remained in the hands of the ordinary, and caused the statute 31 Ed. Ill, ch. 11, which enacts that the ordinary shall depute the next and most lawful friends of the deceased person intestate to administer his goods; which deputies shall have *419 actions in the King’s court as executors, to demand, recover the debts due the intestate, and to dispend the for the soul of the deceased. The next and most lawful friend, is interpreted to be the next of blood that is under no legal disabilities. 9 Rep. 39. The next statute on the subject 1 Hen. VIII, ch. 5, directs administration to be granted by the ordinary to the widow, or next of kin, or to both of them at his own discretion. Thus we see thatall the time the clergy, by the favor of the crown, had the right of administration of intestates’ effects that were testable, whether that were only part or the whole oí them, for the charitable purpose of applying them in pious uses-, by the abuse of the privilege, they applied them to their own, making the right of administration and the right of property amount, in fact, to the same thing. The same appropriation of the surplus after the payment of the intestate’s debts, continued to be made by them from 1 Ed. 1, A. D. 1225, to the year 1357 — the 31 Ed. Ill, when the administration of them was taken away altogether and given to the next and most lawful friend. No alteration in the disposal of the property was effected by this statute, for what, from the long continued usage of the clergy, and the wmrds in the statute, “to administer and disp'end for the soul of the dead,” the grant of the administration was considered to be a grant of property: so that afterwards, when by 21 Hen. VIII, A. D. 1530, the administration was given to the wife or next -of kin, and if there were persons of equal kindred, which ever took administration first, was entitled to the surplus; 2 Fonblanque, 390. 1 T. R. 372, cases there cited; — and this was considered the common law. For after these statutes, when the clergy could no longer have the surplus, they were willing it should be distributed, and for this purpose, upon making the grant of administration they took bonds from the administrator to distribute. The temporal courts interfered by prohibition and declared the bond void at law. 2 P. Wms. 447. 1 Levinz. 233. 4 Bl. Com. 515. And the right of the husband to administer on the effects of *420 the wife, still depends on this doctrine of the common law. por jn year j02g, g Char. I, in the case of Johns vs. Rowe, Cro. Car. 106, a case that was well examined, fox the reporter says, it was divers times delivered, as well common lawyers, as by Doctors of the civil law; it was resolved by Jones, Whitlock and Yelverton, Justices, that of right the administration ought to be committed to the husband, and not to any of the wife’s kindred, by the statute 31 Ed. Ill, ch. 11, as to the most faithful friend, and for their opinion they relied upon 4 Co. 51, Ognell’s case, that the administration of the goods of the wife belonged in right to the husband.
Our act of distributions, 1766, ch. 3, sec. 1, says, “that every person to whom administration on the estate of any person deceased shall hereafter be granted, shall distribute the surplus of such estate in manner following: that is to say, one third part of said surplus to the wife of the intestate, and all the rest by equal portions, to and amongst the children of such person dying intestate, and such persons as legally represent such children. This act is, in substance, a copy of the statute of 22 and 23 Charles II, ch. 10, upon which statute it bath been adjudged by many cases; that an interest was vested, and fixed in the parties entitled to have any share, immediately after the death of the intestate; and the statute doth not make any suspension, or condition precedent to the interests of the parties, for that the clause 8, which is of the same import as 7 of our act of 1715, ch. 48, saying: no distribution shall be made until one year befullyexpired after the intestate’s death,” is merely for the benefit of creditors, and does not relate to the interests of the parties; so decided, Garth. 51, case of Brown vs. Farridell and Shore. So in the case of Freeman vs. Freeman, a case which had often been argued, it was decided by Lord Chancellor King, with the assistance of Lord C. J. Raymond, Sir Joseph Jekyll and Mr. Justice Price, who all agreed that the right to distributory shares vests immediately upon the testator’s death. 2 P. Wm. 442. So in3P. Wm. 49, it is laid down, though by the statute *421 no distribution is to be made within a year, yet'the share of a deceased person will be on interest, transmissible to his executors or administrator; for in this sense the statute makes a will for the intestate.
The case of Squib vs. Wyn is a case in point to the present. Mr. Harbord had four daughters, the Countess of Kingston, Lady Ainslough, Grace Hatcher and Lady Wyn, and devised his real and personal estate equally among his four daughters, and died. The Countess of Kingston died intestate, and Mr. Hatcher, the husband of Grace, one of the daughters, assigned over all that share of the personal estate which came to his wife by the death of the Countess, (and which consisted of choses in action) unto Mr. Richard Snow. Grace Hatcher afterwards died, and Mr. Hatcher having married again, died intestate. His second wife administered unto him. It was insisted for the surviving daughters, that Mrs. Hatcher’s share of Lady Kingston’s personal estate was but a chose inaction; that though a right to a one third part of it vested in Grace Hatcher, yet the husband’s assignment was voluntary, und not to be regarded m equity, and if the assignment was out of the case, the husband Hatcher, upon the death of his wife, had not the least right vested in him to any of his vrife’s choses in action, but must take out administration to his wife, and after having done so, the letters would give him nothing but the power to alter the property, which power, if not made' use of, would then be as if he never had it. And they said, that after the husband’s death without altering the property, then the choses in action of the wife, not administered by the husband, did fall within the statute of distribution and became devisable amongst the next of kin of Grace Hatcher the intestate, the wife of Hatcher.
Lord Chancellor: — The husband’s title at law to the personal estate of his-wife is favored; even a term which is a chattel real, shall go to the husband surviving his wife; and as to all the personal goods, they are his by the inter marriage. And though the husband administering to his wife, is liable to pay her debts, yet he is entitled to the *422 surplus, which will go to his representative. Lord Chan cejjor a]so assignment though voluntary, bound. the property; and with respect to the clause in the statute of frauds, 25, the exception does not confine it to the j-£e 0£ husband, or the circumstance of his having reduced any part of his wife’s personal estate into possession. And he decreed the benefit of Grace Hatcher’s share of the personal estate of her deceased sister to the administrator of Hatcher, the husband.
See the case of Cort vs. Rees, Michaelmas term, 1718: a wife died possessed of choses inaction, and the-husband survived, and died without taking out, letters of administration to his wife, after which the next of kin to the wife, administered to her; and Lord Parker held, that the administrator of the wife was but a trustee for the executor of the husband, the^right! to the wife’s choses inaction being, by the statute of distribution, vested in the husband as next of kin to the wife. And whereas there is a provision in the statute 29 Car. II, sec. 25, saying, that the statute of distribution shall not extend to the estates of femes-covert that die intestate, but that ’'their husbands may have administration of their personal estate, as before making the act. His lordship said this decree was made in favor of the husband and not to his prejudice, so that it was intended by the Parliament, that the husband should be within the statute of distribution so as to take the wife’s choses in action, as to his benefit, but should not be within the statute as to his prejudice, and that this was not a new point but had been settled. And then Mr. Vernon cited this case of Lady Ainslough, wherein the Lord Chancellor’s opinion was the same with Lord Parker’s, viz: that the wife’s choses in action did vest in the husband by the statute of distribution. So that since this resolution, the right of administration follows, or includes the right to the estate, and ought, in case of the , husband’s death, after the wife, to be granted to the next of kin to the husband, in the same manner as it is granted to a residuary legatee. 1 P. Wm.-378, 382.
These cases prove, that a distributive share of an in *423 testate’s estate vests, immediately upon the death of the intestate,subject to no condition, precedent or contingent, and oniy can be opened afterwards in favor of a posthumous child to the extent of its proportionate share. If the death of the intestate takes place during the cover-ture, the distributive share yests alone in the husband absolutely, by the application of the legal principle, that husband and wife are but one in law, — the legal existence of the latter being merged in the former. In like manner, if a legacy is left to a wife, it vests in the husband, and the wife has no control over it, as in the case of Palmer vs. Frevor, 1 Vern. 261, A. D. 1684. Where A devised £100 to the plaintiif’s wife, to be paid within six months after the testator’s death; upon a bill brought for this legacy, the defence set up by the executor was, that he had paid it to the plaintiff’s wife and had a receipt for it. The Lord Keeper held it no payment, and decreed the legacy to be paid to the plaintiff with interest from the six months. The principle of this case is, that if the accruing to the wife is after marriage, during the cover-ture, it vests in the husband alone, and it is equally applicable to distributive shares of personal estates, and dio-ses in action, as to legacies. Thus in 2 Comyn’s Dig. 82, Baron and Feme (E 3) it is laid down, if a legacy is given to a feme-covert, to be paid within 12 months after his death, and the wife die within the 12 months, the interest goes to the husband, for it was vested in him, and he might release within the 12 months, cites 2 Role 134. Again he says, so if chattels were given to the wife after coverture, the interest vests in the husband, tho’ he has not possession of them before the death of his wife.— This last is a stronger case than the one before the court, for in it the chattels or property given by the statute came to the possession of the husband, John C. Turner, during the coverture, and it makes no difference whether the property was given by the act of an individual, or by parol, instrument in writing, last will and testament, or by act in law, as the statute of distribution.
A distributive share of an intestate’s estate is not pro- *424 perlj a chose in action, but a chose in action vests in the ]jUS|jangce a]j0ye cases in 1 P. Wms. 381,382-, and also the cases in Strange, 891,1111, 1182 — all cases of Mandamus, where the question of the property of choses jn act¡on? jn right of the wife, form the point of decision. The first in the year 1731, was a mandamus to Doctor Bettesworth, to grant administration to the husband of Joan, his wife. Return, that by articles before marriage she had power to make a will and dispose of her household estate; that pursuant thereto she made a will, a'nd her mother, Executrix, who proved the same.— To the return it was objected, that she might have choses inaction not covered by the deed of articles, and the husband in all events was entitled to them. Of this opinion was the court, and granted a peremptory mandamus for the husband. This case proves that the choses in action of the wife vest in the husband, as the right to administer follows the right of property. So in the second case, in the year 1739, it is laid down by the court, though generally, the husband is entitled to the administration as next of kin, yet that is in respect of the interest he has in the estate, and because nobody is in equal grade, and that is the reason why administrations are so often granted to a residuary legatee. And in the third case, same year, the court says, this is an insufficient return, and she may have choses in action, or other rights besides what are included in her mother’s will; in these cases there must be some act done by the husband to exclude himself — there must be a peremptory mandamus.
These cases all show, that the choses in action, and personal property accruing to the wife after marriage, and during coverture, vest in the husband. There are, however, to be found in the books dicta the other way; but they are generally previous to the statute of distribution, and the cases on the subject since the passage of that statute. One of them since that statute ought to be noticed, from the very deservedly high character of the chancellor, in the case of Geerforth vs. Bradley, in the year 1755. 2 Ves. Sen. 677. He there says: — “Wher *425 ever a chose in action comes to the wife, whether vesting before or after marriage, if the husband dies in the time of the wife, it will survive to the wife, with this tinetion, that as to those which come during the coverture the husband may for them bring the action in his own name, may disagree as to the interest of his wife, and that recovery in his own name is equal to reducing into possession.” The doctrine here advanced, was not on the point of case, and it is right to infer, that the great and comprehensive mind of that Chancellor was not brought to bear on the Subject; inasmuch as the cause turned upon a settlement, the act of the parties, which necessarily superceded any particular examination into the marital rights, existing by the rules, and dependant upon the principles of the common law. Indeed, he himself says: “but that question is out of the case here; it depends on the settlement.”
It may be here remarked, that the report of this case in Yesey may be somewhat inaccurate, as far as respects the above question; and lam inclined to this supposition from a contrary opinion of Lord Hardwicke, given about sixteen years before, in a case where the very point before this court in this case was decided by him. The case Lightbourne vs. Holyday, Easter term 12 Geo. 2,2, Eq. Ca. Abr. I ch. 5, more fully reported in Maddock’s Reports, vol. 2, p. 135, by the name of Holloway vs. Lightbourne, is as follows: “The bill in this case was brought suggesting fraud and want of consideration in obtaining a promissory note from the plaintiff by the defendant’s wife, setting out the note to be in this form: “Received of Mrs. Lightbourne £300, for which I am to be accountable,” and prayed the note to be delivered up, and the defendanttobe restrained by injunction of the court, from any further proceeding at law upon it. And the defendant not answering in time, the common order of course was issued; andbefore any answer came in, the defendant, Lightbourne, the husband, died. On which it was moved, that the common injunction might be dissolved, the cause being abated; but on the other hand it was insisted, that there is no abatement, for that the note being given to the wife and surviving her hus *426 band, the interest in the note had vested in her, and would not go to the Executor of the husband. But Lord Hard-wicke, Chancellor^ having taken time to consider of it, de-this to be no abatement, and that the interest in note ]jy ¿eatb of the husband, vested in his executor, and did not survive the wife. It is not like the case of a bond or note given to a feme sole, who, after marries and survives her husband, in such a case it is certain if the money is not received upon the bond or note, that it shall survive to the wife, and shall not go to the executor of the husband. And, if during the coverture it is put into suit, it cannot be by her husband alone. (3 Lev. 403, 1 Eq. Ca. Abr. 64,1 Yern. 393); but in such case, the property being in the wife, the husandis rather joined for conformity than from the nature of the cause of action. But where ahond or promissory note,(which is much stronger than the present case, for here is no promise to pay the wife), is given to a feme-covert, it has been held, that the interest in such a note, immediately vests in the husband, and that he may maintain an action upon it in his own name. So was Howell’s case in 3 Lev. 403. It was debt on a bond to a wife, the husband sued alone without naming the wife, the defendant claimed oyer of the bond, demurred, and had judgment, which shows that the property of a bond or note generally, which is given to a feme-covert, is vested in the husband. This case, therefore, is now abated, and the injunction ought to be dissolved, but 1 give the plaintiff a week’s time to revive. This case being a decision of Lord Hardwicke, after full consideration, upon time taken for the express purpose, must he held as a high authority, and being on the very point of this cause, would seem to render any other citations unnecessary. I shall therefore only cite two more, being late cases; — the one supporting, the other rather opposing Lord Hardwicke.
The first is the case of Barlow vs. Bishop, 1 East. Rep. 432, in the year 1801, and sustains, being a direct authority upon the principle, that the accruing in the right of the wife after the marriage, during the coverture, vests the pro *427 perty in the husband. The defendant gave his note to Mrs. Parry, payable to her,being a note trader, with aview she should pay it over to the plaintiff to whom she was debted, which she did by indorsing it to him: and plaintiff brought suit against the defendant, the maker. The court ofK. B. held, the suit would not be supported. Lord Kenyon observed no ground has or can be stated on which the action can be sustained. It is clear, says he, that the delivery of the note to the wife vested the interest in her husband, and the indorsement being in her own name, it is quite impossible to say, she could pass away the interest of her husband by it.
The other is that of Phiellishirp and Susannah, his wife, vs. Pluckwell, 2 Maule and Selw. 293, A. D. 1814, a case not directly, indeed upon the point, but upon the doctrine, is noticed and adverted to in delivering the opinions of the court by way of illustration. This decision was, that the husband and wife may sue on a promissory note, made to the wife during coverture. It was objected to the plaintiffs recovery, that the face of the note, not shewing any meritorious consideration moving to her, the husband alone ought to sue; and in support of this position, were cited, Bidfood vs. Way, 2 Bl. Rep, 1236.; Rose vs Baker, 1 H. Bl. 114. Abbot vs. Blofield, Cro. Jac. 644. Waller vs. Baker, 2 Wils. 414. Brashford vs. Buckingham, Cro. Jac. 77, 205. Fountain vs. Smith, 2 Sid. 128. Holmes vs. Wood, cited in Waller vs. Baker; on the other side were cited in support of the action: Co. Lit. 120 a 351. 1 Roll. Abr. Baron and Feme, H. (Pl. 6, 7,) 345. Day vs. Pargrave, Mr. Ford’s note 13 and 14, Geo. 2, stated in the notes to 2 Maulé and Selw 396. I must content myself with these references only, which may be looked into, as an abstract of the matter would run into too great a length. Upon the whole, my opinion is, that by the English cases, resting on the common law, not only the current, but the weight of authority is, that a bond or note (which is in strictriess considered a chose in action) given to the wife after and during the coverture, vests alone in the husband, and upon the surviving of the. wife goes not *428 to her, but to the representative of the husband. The Qnjy cage that I have seen directly in point, which has oo curred in the United States,is in accordance with this re-suit, and is the one cited at the bar on argument, Griswold vs. Penniman, and another, 2 Con. Rep. 564, A. D. 1818, where it was held that the distributive share of an intestate’s personal estate, accruing in right of the wife during coverture, vests, before actual distribution made, in the husband, and does not, in the event of the prior death of the husband, go to the surviving wife. '
The second question is, if the property did not vest, immediately upon the death of the intestate, Charles Lee, in John C. Turner, the husband, was it not reduced into his possession in March 1821, by the sale of the intestate’s administrator, under the circumstances.
It is tobe observed upon this sale, that it was very different from sales in general of intestate’s estates, where the object of the sale is a reduction of the effects into money, for the purpose of discharging the debts due by the deceased; and the public in general is contemplated the purchaser, where money is given, (as the value for the thing received) by the purchaser as the sole consideration of the transfer of the property, by the seller. In.this sale no money was given, or expected by the vendor to be received; money was notits object, nor even the substitute of money and indebtedness to the administrator for the property purchased. The object of the sale was a distribution of the effects of the intestate, Charles Lee, sub modo. The form adopted by sale was the mode agreed upon by the parties in interest, the distributees and the administrator, who was himself one of them, as best calculated to meet their views upon grounds of fairness and equality, — admitting of the choice and of particular items to each of the children without prejudice to the rest, or sacrifice of the property by favoritism. The ven-due price was a scale of value of the particular items, measuring its quantum of a distributive share, not the consideration of the appropriation. The distributive right was the actual consideration of the nominal purchase.— *429 The notes taken by the administrator exhibited a schedule, evidencing the agrégate of the distributive fund, the just amount of a distributive share, the quantum of perty received by each share, which at the same time shewed its excess or diminution in reference to the correct amount of the distributive share, and of course the sum to be paid by the greater to the less purchaser, to equalize and adjust the distribution.
With respect to the plaintiffs, Catharine’s share of the land decended to her from her father, Charles Lee, and which, by the agreement of the distributee, of whom John C. Turner was one, was agreed to be sold at the same time with the personal property, and the proceeds thereof to form a part of the aggregate composing the distributive land; I can find no authority, that authorizes the fee-simple interest of a feme-covert to be taken from her, and vested in another person, without her previous assent thereto given upon private examination before a competent authority, to make such examination. The plaintiff Catharine’s fee-simple interest in the land so decen-ded to her, still remains in her, unaffected by the sale.
The rights of the parties will then stand thus: Let the price the land sold for be deducted from the amount of the aggregate sum produced by the sale of both the personal and real estates; the balance remaining after this deduction made, continued the proper distributable fund, a one eleventh part of which vested in J. C. Turner, and became part of his personal estate. Upon his death, a one third part of his personal estate (there being two children) vested in his widow, the plaintiff, Caroline. John C. Turner having received the one eleventh part of the product of the sale of the land, the defendant, John Turner, either as administrator or as guardian to his children, (and in which capacity, will depend on his settlements made with the county court, whether he holds the said moneys as administrator, or has passed them to the account of his wards) holds in trust for the use and benefit of the other ten distributees, with interest thereon from the time it was received by John C. Turner. But, as *430 these distributees are not before this court, no judgment can ^ given, but the rights of the parties only can be declared.